IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMANDA CROW, Individually and on behalf of N.H., a minor, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | Civil Action No. 3:25-CV-0074-D |
| DALLAS INDEPENDENT SCHOOL DISTRICT, | § § § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

In this is action by plaintiff Amanda Crow ("Crow"), individually and on behalf of N.H., a minor (Crow's son), Crow seeks relief under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794.[1]  Defendant Dallas Independent School District ("DISD") moves under Fed. R. Civ. P. 12(b)(6) to dismiss Crow's claims under the ADA and the Rehabilitation Act.  For the reasons that follow, the court grants DISD's partial motion to dismiss Crow's first amended complaint ("amended complaint"), and also grants Crow leave to replead.

---

[1]The parties have stipulated to the dismissal of count 4 based on the settlement of that claim.

I

N.H. is an eight-year-old student with autism and a speech impairment.[2] He began struggling in school in his pre-kindergarten and kindergarten school years as a student in DISD. On multiple occasions, N.H. eloped from school. When Crow requested DISD's help, she was given information regarding available mental health services. According to the amended complaint, Crow then removed N.H. from pre-kindergarten in DISD and enrolled him in a private preschool because DISD would not evaluate him or provide support.

In January 2023, when N.H. was enrolled in kindergarten at DISD's Central Elementary School ("Central"), Crow submitted a consent form requesting assistance with N.H.'s difficulties in school. In March 2023 N.H.'s father submitted paperwork to Central administrators to have N.H. evaluated for special education eligibility. Crow was told that N.H. could not be evaluated until the following school year because DISD lacked adequate staff. Meanwhile, Crow was regularly receiving calls from the school advising her to pick N.H. up early from school.

Toward the end of the school year, DISD instructed Crow to take N.H. to Dallas Behavioral Healthcare Hospital, a hospital that provides psychiatric stabilization and dual diagnosis treatments for patients. Crow complied, but she alleges that N.H. learned new negative behaviors from his time at the facility.

---

[2]In deciding DISD's Rule 12(b)(6) motion to dismiss, the court construes the amended complaint in the light most favorable to Crow, as the nonmovant, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Crow's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

When N.H. began first grade at Central, Crow submitted a second form in which she consented to have him evaluated. In November 2023, more than one year after Crow first inquired about testing, N.H. received his first full and individual evaluation. He was diagnosed with autism and a speech impairment disorder.

DISD later conducted an Admission, Review, and Dismissal ("ARD") meeting in which an Individualized Education Plan ("IEP") was drafted. The IEP recommended services for speech therapy and personal social development as well as placement in a centralized classroom, called "Redirection," outside of N.H.'s home campus. Although Crow initially agreed to N.H.'s placement in the Redirection classroom, she objected after speaking with N.H.'s intended Redirection teacher. Crow objected on the basis that Redirection is a program for children with physically aggressive behaviors, whereas N.H. was not considered an aggressive child. Crow also expressed the concern that N.H. could be exposed to physical violence in the classroom.

DISD's Compliance & Instructional Support Manager, Karisha Bangs ("Bangs"), and its Special Education Coordinator of Instructional Support & Compliance, Andretti Camper (among others), initially insisted on N.H.'s continued placement in Redirection. Ultimately, DISD staff agreed to switch N.H.'s placement back to Central, where accommodations would be made. DISD held a second ARD meeting in December and drafted an IEP largely identical to the first, and Crow objected to N.H.'s placement in a different rehabilitation classroom.

In January 2024 DISD agreed to provide N.H. a qualified aide to support N.H. at his

home campus. The aide whom DISD provided, however, had no formal education working with students with special needs. Following the assignment of the aide, Bangs contacted Crow to inform her that N.H. was doing much better since receiving the aide's support. Later that month, however, N.H. again eloped. The aide followed N.H. home and left him unattended after confirming that he had reached home. N.H. returned to school after an administrator drove to the residence and called the police. The next day, Crow removed N.H. from school and began to home-school him.

Crow filed an administrative due process complaint in May 2024. The special education hearing officer ("SEHO") determined that DISD violated IDEA's Child Find obligations by failing to timely evaluate N.H. and that DISD failed to provide N.H. a free appropriate public education ("FAPE"). The SEHO ordered DISD to hold two more ARD meetings for N.H., arrange for a one-on-one aide trained in dealing with special education students and students with autism, and provide N.H. compensatory services, including an additional 30 minutes of speech therapy and 75 minutes of personal social development every week.

Following the SEHO's final decision, DISD assigned an existing employee who was not a certified special education teacher to serve as N.H.'s aide. DISD later replaced that aide and advised Crow that the new aide had received crisis prevention intervention and special education training. But DISD failed to provide N.H. compensatory speech services for several weeks after the SEHO's order.

Crow then filed the instant suit asserting claims under the IDEA, the ADA, and § 504

of the Rehabilitation Act. After DISD partially moved under Rule 12(b)(1) and Rule 12(b)(6) to dismiss Crow's original complaint, Crow filed the instant amended complaint. DISD again moves to dismiss under Rule 12(b)(6). The court is deciding the motion on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's amended] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (brackets

omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### III

The court considers first whether Crow has stated a claim on which relief can be granted for disability discrimination under the Rehabilitation Act and the ADA.

### A

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).  Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Precedents concerning either § 504 of the Rehabilitation Act or the ADA generally apply to both.  *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, 855 F.3d 681, 690 (5th Cir. 2017).

To state a claim for discrimination under § 504 or the ADA, a parent bringing suit on behalf of her child must plausibly allege "(1) that he is a qualified individual . . . ; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination

is by reason of his disability." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)).  In the educational context, "[a] cause of action is stated under § 504 [and the ADA] when it is alleged that a school district has *refused* to provide reasonable accommodations for the handicapped [student] to receive the full benefits of the school program."  *D.A. ex rel. Latasha A. v. Hou. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010) (emphasis in original) (quoting *Marvin H. v. Aus. Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983)).  For a failure to accommodate claim, a plaintiff must show that the school district "knew of the disability and its consequential limitations."  *Cadena.*, 946 F.3d at 724.  Furthermore, to recover compensatory damages under either section, a plaintiff must prove that the discrimination was intentional.  *Id.*

B

DISD maintains that Crow's amended complaint does not plausibly allege that DISD intentionally discriminated against N.H. because it lacks sufficient facts to create the reasonable inference that DISD acted in bad faith, with discriminatory intent or gross misjudgment.

Historically, to show intentional discrimination in the context of a claim for denial of a FAPE, as guaranteed by the IDEA, "facts creating an inference of professional bad faith or gross misjudgment [were] necessary to substantiate a cause of action for intentional discrimination under § 504 or ADA against a school district predicated on a disagreement over compliance with IDEA."  *D.A. ex rel. Latasha A.*, 629 F.3d at 455.  In *A. J. T. by &*

*through A. T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, \_\_\_ U.S. \_\_\_, 145 S. Ct. 1647, 1655-56 (2025), however, the Supreme Court rejected the "bad faith or gross misjudgment" standard and held that "ADA and Rehabilitation Act claims based on educational services should be subject to the same standards that apply in other disability discrimination contexts." After *A. J. T.* the Fifth Circuit's heightened standard for intentional discrimination in cases of ADA and Rehabilitation Act claims arising out of IDEA disputes no longer applies insofar as it mandates a greater showing than is required to show intentional discrimination in other contexts. *See id.* Thus the court need not consider whether Crow's second amended complaint creates a reasonable inference that DISD acted with bad faith or gross misjudgment.

C

1

In the alternative, DISD contends that Crow has failed to plausibly plead that any appropriate DISD official responded to actual knowledge of discrimination with deliberate indifference.[3] Crow responds that the amended complaint does support a plausible inference of deliberate indifference because it demonstrates that, on multiple occasions, DISD refused to meet its obligations under federal law, even after the SEHO issued an adverse ruling.

---

[3]The parties do not dispute that, in light of *A. J. T.*, the deliberate indifference standard applies to disability discrimination claims under § 504 of the Rehabilitation Act and the ADA. *See also A. J. T.*, 145 S. Ct. at 1655 (concluding that the Eighth Circuit must apply the deliberate indifference standard to this case as it does in other disability discrimination contexts). Accordingly, the court will apply the deliberate indifference standard in deciding DISD's motion.

Crow contends that her amended complaint alleges that DISD displayed deliberate indifference by (1) delaying its evaluation of N.H.; (2) instructing Crow to take N.H. to a psychiatric hospital; (3) sending N.H. to a Redirection classroom despite objections from Crow and concerns from N.H.'s teacher; (4) failing to provide N.H. a qualified aide prior to the SEHO's order; and (5) failing to comply for several weeks with the SEHO's order to provide N.H. a qualified aide and compensatory speech services.[4]

2

"[T]he deliberate indifference standard is a high one." *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (quoting *Doe ex rel. Doe v. Dall. Indep Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)). Deliberate indifference occurs when the response to an incident or a risk of harm is clearly unreasonable in light of the known circumstances. *Id.*; *see also Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 996 (5th Cir. 2014) (applying the deliberate indifference standard in a § 504 disability harassment claim and requiring a showing that the defendant knew about the harassment); *A. J. T.*, 145 S. Ct. at 1655 (stating that, under the Eighth Circuit's deliberate indifference standard, "it is enough that a plaintiff prove the defendant disregarded a 'strong likelihood' that the challenged

---

[4]Crow makes additional factual allegations for the first time in her response to DISD's motion to dismiss, including that DISD forced N.H. to wear a mask. Factual allegations presented for the first time in a response to a motion, however, are generally not properly before the court. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Middaugh v. InterBank*, 528 F.Supp.3d 509, 535 (N.D. Tex. 2021) (Hendrix, J.). The court will therefore limit its consideration to the facts alleged in Crow's amended complaint. Consequently, the court need not consider whether the allegations regarding the forced masking are barred by the statute of limitations, as DISD alleges in its reply.

action would 'result in a violation of federally protected rights.'" (quoting *Meagley v. Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011)); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (explaining that deliberate indifference requires a greater showing than negligence).

### 3

Absent non-conclusory factual allegations that DISD had knowledge of N.H.'s disability, or that DISD was at least apprised of a strong likelihood of such a disability, the administrative delay and referral to Dallas Behavioral Healthcare Hospital do not enable the court to draw the reasonable inference that DISD failed to accommodate N.H., or discriminated against him, "by reason of" his disability. *See Melton*, 391 F.3d at 671-72; *see also Smith v. Harris Cnty., Tex.* 956 F.3d 311, 317 (5th Cir. 2020).

Crow contends that DISD delayed its evaluation of N.H. by more than one year due to insufficient staffing and resources and referred N.H. to Dallas Behavioral Healthcare Hospital. This allegation, taken as true, only enables the court to draw the reasonable inference that DISD suffered from bureaucratic inefficiencies, not that it decided not to accommodate N.H. or acted clearly unreasonably in light of the known circumstances. *See, e.g.*, *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014) (explaining that the deliberate indifference standard requires more than bureaucratic inaction); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir.2009) (stating the same). Crow's conclusory assertion that DISD forced her to take N.H. to Dallas Behavioral Healthcare Hospital "because [it] did not want to evaluate him or provide the proper supports" is unsupported by

non-conclusory factual allegations in the amended complaint. P. Resp. (ECF No. 24) 12.

The remainder of Crow's allegations are also insufficient to plead deliberate indifference. Crow asserts that, following N.H.'s evaluation and an initial ARD meeting, DISD recommended that N.H. be placed in Redirection, an inappropriate placement for N.H. given his unique needs and lack of a reputation for physical aggression. This allegation challenges the adequacy of the initial IEP, but it does not plausibly plead a deliberate, unreasonable choice to ignore a strong likelihood that N.H.'s rights would be violated. Crow also alleges that N.H.'s teacher raised concerns about the placement at the ARD hearing, but the amended complaint is devoid of the additional, specific factual allegations that are necessary to assert a plausible claim that DISD was indifferent to these concerns in formulating its initial IEP. Even assuming that DISD did not take the best course of action, the allegations at best support the reasonable inference that DISD was negligent in its decision to place N.H. in Redirection or that it should have known that a different course of action was proper, not that it had actual knowledge that its assignment was improper or that it made a deliberate choice to avoid a proper accommodation. *Cf. D.E.*, 765 F.3d at 269 (requiring "knowledge that a federally protected right is substantially likely to be violated").

Likewise, Crow's allegations that DISD provided N.H. an unqualified aide do not enable the court to draw the reasonable inference that DISD was deliberately indifferent to N.H.'s needs. Again, these allegations only support the reasonable inference that DISD may

have made incorrect accommodation decisions or acted negligently.[5]

Crow's final allegation in support of the inference that DISD was deliberately indifferent in its treatment of N.H. is that DISD failed to comply with the SEHO's final decision for several weeks after it was issued. Concerning the assignment of a new aide, however, the amended complaint does not specify whether DISD failed to assign an aide within 30 days of the SEHO order, as required, or whether the crisis prevention intervention and special education training of N.H.'s latest aide was insufficient under the SEHO's order. Moreover, the amended complaint is insufficient to plausibly plead that the delay in providing compensatory services to N.H. following the SEHO's order was the result of DISD's deliberate indifference.

Crow has failed to plausibly plead that DISD acted with deliberate indifference in its alleged discrimination against N.H.[6] The court therefore grants DISD's motion to dismiss

---

[5]Although the SEHO's final decision found that DISD violated IDEA and failed to provide N.H. with a FAPE, these findings, even if legally correct, do not alone support the reasonable inference that the discrimination was intentional, as required by § 504 and the ADA. *See Est. of Lance*, 743 F.3d at 990-95 (explaining that the requirements of providing a FAPE under IDEA and proving a failure-to-provide claim under § 504 are distinct); *cf. Pinn ex rel. Steven P. v. Harrison Cent. Sch. Dist.*, 473 F.Supp.2d 477, 483-84 (S.D.N.Y. 2007) (concluding that an administrative officer's conclusion that a student was denied a FAPE was insufficient to satisfy the intent requirement under § 504).

[6]DISD seeks to apply the standard outlined in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289-90 (1998). *Gebser* is a non-disability discrimination case that requires an additional pleading that an appropriate person with authority to take corrective action had knowledge of the plaintiff's disability and need for accommodation. *Id.* Some circuits have applied *Gebser* in the disability discrimination context, but the Fifth Circuit, prior to *A. J. T.*, declined to do so. *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002). In at least one non-precedential opinion, where the parties agreed to apply the

Crow's Rehabilitation Act § 504 and ADA claims.

IV

The court now turns to DISD's assertion that Crow has no individual claim under the Rehabilitation Act or the ADA.

DISD maintains that neither § 504 of the Rehabilitation Act nor the ADA provides Crow, as an individual, with a cognizable legal claim. Crow responds that the allegations related to the impact on Crow of the alleged discrimination "were not intended to plead an individual cause of action for [Crow] herself," P. Resp. (ECF No. 24) 14, but are related to the harm Crow suffered and "are relevant to the claims brought on behalf of N.H." *Id.* at 15.

The ADA and Rehabilitation Act provide remedies for individuals with disabilities who are discriminated against on the basis of their disabilities. Because Crow does not allege that she is disabled or that she has been discriminated against on the basis of a disability, she has not alleged individual claims under either statute. A parent does not have standing under the ADA or the Rehabilitation Act to bring an individual claim under either act on the basis of alleged discrimination against her child. *See Hooker v. Dall. Indep. Sch. Dist.*, 2010 WL 4025776, at *6 (N.D. Tex. Sept. 13, 2010) (Ramirez, J.), *rec. adopted*, 2010 WL 4024896 (N.D. Tex. Oct. 13, 2010) (Fish, J.). Accordingly, to the extent the amended complaint

---

deliberate indifference standard, the Fifth Circuit applied the *Gebser* standard. *See Harrison v. Klein Indep. Sch. Dist.*, 856 Fed. Appx 480, 484 n.4 (5th Cir. 2021) (per curiam). The court need not address whether the amended complaint satisfies *Gebser*'s additional pleading requirement because it concludes that Crow's amended complaint does not plausibly plead deliberate indifference.

- 13 -

alleges any claims on behalf of Crow in her individual capacity, they are dismissed.

V

The court grants Crow's alternative motion for leave to amend. *See, e.g.*, *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). There is no indication that Crow cannot, or is unwilling to, cure the pleading defects the court has identified. And she has expressly moved for leave to amend if the court concludes that DISD's arguments have merit. Accordingly, the court grants Crow 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

* * *

For the reasons explained, the court grants DISD's partial motion to dismiss, and also grants Crow leave to replead.

**SO ORDERED**.

September 3, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE